269 Wis. 478 (1955)
ESTATE OF KOOS:
BROOKHOUSE and others, Appellants,
vs.
Koos, Executrix, Respondent.
Supreme Court of Wisconsin.
March 9, 1955.
April 5, 1955.
*479 For the appellants there were briefs by Hammond & Hammond of Kenosha, and oral argument by Walter W. Hammond and Willis R. Hammond.
*491 For the respondent there was a brief by Staplekamp & Hartley of Kenosha, attorneys, and Charles F. Wratten of Racine of counsel, and oral argument by Judson W. Staplekamp and Fred D. Hartley.
Edward J.
Koos died testate on September 10, 1952. Mary A. Koos, the widow of the deceased, was designated in the will as executrix of the estate and trustee of the testamentary trust. On October 21, 1952, the will was admitted to probate in the county court of Kenosha county, and the widow was appointed as executrix of the estate, and qualified in such capacity. There has as yet been no formal appointment by the court of Mary A. Koos, as trustee, nor has there been any assignment of assets to her as trustee.
Four of the minor children, on whose behalf these petitions were presented, are issue of the marriage. The other, is a child of the widow by a former marriage. Andrew R. Brookhouse was appointed as guardian ad litem for the four children of the marriage. John E. Malloy was appointed as guardian ad litem for the other child. There is no conflict of interest between the children or their guardians on this appeal.
At the time of his death, the testator, Edward J. Koos, was president of N. S. Koos & Son Company, a closely held corporation, which engages in the manufacture of fertilizers *480 and other agricultural chemicals. Its capital stock consists of 6,000 shares, par value $100 per share, of which part are unissued. 1,900 of these shares were owned by Edward J. Koos when he died. At that time, 1,900 of the shares were owned by Richard P. Koos, a brother of the deceased, who managed the business with him. 845 shares were held by Grace A. Koos, a sister, and 355 shares were owned by others.
The 1,900 shares owned by decedent were originally appraised in the county court at $100 per share, or a total value of $190,000. Later they were revalued for Wisconsin inheritance-tax purposes at $130 per share, or a total value of $247,000. Other assets of deceased's estate totaled $65,426.70 in value. In addition, property held jointly with decedent's wife, and life insurance payable to his children, are included in the inventory for inheritance-tax purposes.
The will is dated November 28, 1951, and after providing for bequests of personal effects, household furniture, and automobiles to Mary A. Koos, the wife, it directs distribution of the residue of the estate, in shares. In so far as material, the will specifically provides:
"Article Fourth: All the rest, residue, and remainder of my estate, real, personal, and mixed, of whatever nature and wheresoever situate, which I may own or have the right to dispose of at the time of my decease, including any lapsed legacies or trust funds that may become part of my residuary estate, I direct my executrix to divide into two parts or shares, which said parts or shares are hereinafter designated for the purpose of convenience as part No. 1 and part No. 2, and which said parts shall be constituted as follows:
"Part No. 1 shall contain an amount equal to fifty per cent (50%) of the value of my adjusted gross estate as finally determined for federal estate-tax purposes, less the aggregate amount of marital deduction, if any, allowed for such tax purposes by reason of interests in insurance, or other property, or interests in property passing or which have passed *481 to my said wife otherwise than by the terms of this item of my will. It is my intention that part No. 1 shall contain the maximum value in assets, but no more, that may be deducted from my estate as the so-called `marital deduction.'
"Part No. 2 shall contain the balance of the residue not allocated to part No. 1.
"Article Fifth: I do hereby give, devise, and bequeath the whole of part No. 1 as hereinbefore defined, to my beloved wife, Mary A. Koos, as and for her own property, absolutely and forever.
"If my beloved wife shall not be living at the time of my death, or in the event my beloved wife and I shall be killed in a common accident or calamity, then and in that event part No. 1 shall be added to the trust hereinafter provided for, and I do so direct, devise, and bequeath.
"Article Sixth: I do hereby give, devise, and bequeath the whole of part No. 2 as hereinbefore defined, to my beloved wife, Mary A. Koos, in trust nevertheless, for the following uses and purposes:
"1. To pay over and deliver to my beloved wife, the net income derived from said trust, in convenient instalments, which said income shall be used by my said wife for the purpose of the maintenance and education of my beloved children until such time as the youngest of said children shall arrive at the age of twenty-one (21) years.
"2. To pay over and distribute at such time as the youngest of said children shall arrive at the age of twenty-one (21) years, the balance of corpus remaining in such trust fund at such time, together with any income accrued thereon, share and share alike, to my beloved children, the child or children of any deceased child of mine to take their parent's share by right of representation.
"3. I do hereby set forth, in addition to any other provisions of this will, the following directions and provisions in respect to said trust:
"(a) If my youngest child should die prior to attaining the age of twenty-one (21) years, then this trust shall terminate at such time as such youngest child would have arrived at the age of twenty-one (21) years.
"(b) Until the date of final distribution, said trust fund shall be held, maintained, and managed as one fund for there *482 shall be no duty on the part of the trustee, or my wife, to allocate or use income equally as to each child.
"(c) In the event of the death of any of my children during the life of said trust, the said trustee and my said wife shall allocate to, or allocate for the use and benefit of the child or children of any deceased child of mine, the income or parts of corpus under paragraph (4) herein, which would normally be allocated to, or for the use and benefit of any child of mine, with due regard, however, to (b) above.
"(d) It is my intent and purpose that all of the income from said trust shall be used for the support, education, and maintenance of my children, and their child or children by right of representation as herein set forth. I have full faith and confidence in my wife's good judgment and her sense of fairness and I am of the opinion that the income from said trust, together with such sums as my wife shall contribute from her own moneys, shall be sufficient to give proper support to my children. In the event that any of the income from said trust shall not be necessary for the support, maintenance, and education of my children, then the same shall be added to the corpus and shall be distributed as a part thereof on the termination of this trust, subject, however, to the provision that the said trustee, in her discretion, may cause to be distributed to such of my children who are over the age of twenty-one (21) years, their share or portion of said income, in the event said income shall not be necessary for the support, education, and maintenance of such of my children or the beneficiaries of this trust who have not arrived at the age of twenty-one (21) years.
"4. To pay to, or to the use and benefit of any currently entitled income beneficiaries of this trust, such instalments of corpus or principal as may be deemed necessary by my trustee in her sole and absolute discretion for the maintenance, comfort, and general welfare of any such beneficiary. Such emergency instalments herein provided for shall not be charged against the share of trust corpus which may ultimately pass to the recipient of such emergency instalment.
"Article Seventh: My executrix during the executrix' tenure, and my trustee in said trustee's administration of the trust hereunder, shall have full and complete authority to *483 do all things necessary for the complete and efficient administration of my estate and trust and, without limiting the generality thereof by the following enumeration, shall, to that end, be clothed with absolute rights, powers, and discretion as follows:
"1. To retain in her discretion, any and all property owned by me at the time of my death or subsequently acquired.
"2. To invest and reinvest in any type of real estate or personal property, including common and preferred stock, without restricting such investments or reinvestments to those defined by the laws of Wisconsin as legal trust-fund investments.
"3. To permit available trust funds to remain temporarily uninvested.
"4. To sell, assign, and convey, by deed or by executory contract, any or all assets, either real or personal, comprised in my estate and trust for such prices and on such terms as she shall deem in the best interest of my estate.
"5. To borrow money, to mortgage, to pledge, or to lease with or without option to purchase, and to exchange property for other property.
"6. To pay, settle, or compromise all claims and obligations held by or asserted against my estate, all in such manner and upon such terms as she shall find practicable and just.
"7. To make distributions or divisions of principal at values fixed by said executrix or trustee, including the original distribution or division into part No. 1 and part No. 2 herein mentioned.
"8. To make any distribution of principal hereunder, including the original distribution or division into part No. 1 and part No. 2, in money, securities, or other property and the judgment of the executrix and trustee as to what shall constitute a just and proper division or apportionment among beneficiaries shall be binding and conclusive on all parties. It is my recommendation that in division into part No. 1 and part No. 2, my executrix shall include in part No. 1, all possible liquids and cash.
"9. To determine in respect to part No. 2, being the trust herein, upon all allocations, charges, or credits as between *484 principal and income, notwithstanding any trust-account rules prescribed by judicial or statutory authority.
"Article Eighth: At the time of drawing this will, I am in the process of working out an agreement with my brother in respect to the sale of a portion of my stock in the N. S. Koos & Sons Company, to him in the event of my prior death. In the event such agreement be in force and effect at the time of my death and the option to my brother be exercised, it is my request that my wife shall make no attempt to interfere with my brother's discretion in the management of said company as I have full faith and confidence in his good judgment and integrity. This admonishment shall at no time be construed as an attempt on my part to curtail her rights as executrix or trustee holding minority interest in said company.
"Article Ninth: . . .
"Article Tenth: I hereby appoint my beloved wife, Mary A. Koos, of Kenosha, Wisconsin, trustee of the trust herein created and defined and I do hereby appoint my beloved wife as the executrix of this my will and grant to her as such executrix, all of the powers and discretions of investment, sale, and administration defined in respect of my trustee. I have appointed my beloved wife as such executrix and trustee because of my faith and confidence in her.
"If my beloeved wife shall not be living at the time of my death, or in the event my beloved wife and I shall be killed in a common accident or calamity, then I do hereby nominate and appoint the Northwestern Loan and Trust Company, of Kenosha, Wisconsin, as executor and as trustee in her place and stead. This same rule shall apply in the event of her death after her qualification as trustee and prior to the termination of this trust. Such successor trustee or executor shall succeed to all the powers and discretions herein vested in the original executrix and trustee."
A codicil dated November 29, 1951, provides in part:
"In article Second of my said last will and testament, I make reference to the payment of estate and inheritance taxes and I hereby, for the purpose of clarity, direct that they shall be paid as follows:
*485 "1. All federal estate taxes shall be paid by my said executrix out of that portion of my estate which I have designated as part No. 2.
"2. Any state inheritance tax on that portion of my estate which passes to my beloved wife shall be paid by her out of that portion of my estate which passes to her and which I have designated as part No. 1.
"3. All other state inheritance taxes shall be paid by my said executrix out of that portion which I have designated as part No. 2."
An agreement between the brothers for the sale of stock was not concluded. After the death of Edward J. Koos, his brother, Richard P. Koos, was elected president of the company, and appointed as manager, and continued in such capacities until the annual meeting of the stockholders of the corporation held on July 11, 1953. Previous to said meeting, Richard P. Koos had been contacted, but declined to make any offer for the shares of stock held by the estate. At the election in conjunction with the annual corporation meeting in July, 1953, Mary A. Koos voted the shares owned by the estate. Grace A. Koos Mary A. Koos, and one Donald W. Anderson were elected as members of the board of directors. Richard P. Koos failed of re-election as director by the vote of the majority of the stockholders. Grace A. Koos who had served as a director and as secretary of the company after the death of Edward J. Koos, was selected as president. By action of the directors, Grace A. Koos and Mary A. Koos became entitled to a salary of $12,000 and a bonus of five per cent profits for services to be performed on behalf of the company in the management thereof.
On September 11, 1953, Mary A. Koos received an offer from Richard P. Koos to purchase stock from the estate at $125 per share, which offer was not accepted for the reason that it was considered that such price was inadequate. Thereafter, *486 an offer came to the executrix from eastern interests for the purchase of the stock at $135 per share. At the trial she testified that this offer was accompanied by disadvantageous conditions. At about the same time, Grace Koos showed interest in acquiring stock and Mary A. Koos commenced negotiations with her.
On December 1, 1953, Richard P. Koos commenced an action in the circuit court for Kenosha county attempting to have the corporate officers removed. The court sustained a demurrer to the complaint in that action.
On February 6, 1954, there was a written offer by A. J. Newhagen for the purchase of not less than 600 nor more than 950 shares of the estate's stock at $175 per share. This offer was accompanied by a check of $5,000 as earnest money. The offer was to be irrevocable for thirty days, subject to conditions, that within ten days Mary A. Koos, as executrix and trustee, apply to the court for approval of the acceptance of the offer; that the offer be approved by the court; that at the time of transfer of the shares, no material and unfavorable change shall have occurred in the financial condition of the company as compared to its condition on June 30, 1953, exclusive of matters set forth in the pleadings of the action in the circuit court for Kenosha county (hereinbefore referred to); that no dividends shall have been declared or paid by the company since June 30, 1953, other than such as declared prior thereto; that between June 30, 1953, and date of transfer, the company shall not have incurred obligations or made payments except in the ordinary course of business; that at the time of transfer no burdensome contracts and none having a duration of longer than a year shall be in effect; and that at the time of transfer, no limitations or powers granted under sec. 180.32 (3), Stats., will be contained in the articles or by-laws of the company. Mary A. Koos declined to accept this offer, and did not submit the consideration thereof to the court.
*487 The county court upon petition of Andrew R. Brookhouse, guardian ad litem, ordered Mary A. Koos to appear before it on March 18, 1954, and produce the original of the Newhagen offer for the court's consideration, and to submit to examination in regard thereto.
The guardian ad litem's petition required that the executrix submit to the court the proposed distribution of assets of the decedent to the trust estate. It directed attention to the offer of Newhagen, and indicated that such sale would eliminate an investment by the trust estate in a highly competitive and speculative business, and would also eliminate questions of the propriety of the conduct of Mary A. Koos as executrix and trustee, and her competency to act as such trustee. It referred to the action taken at the corporation meeting in July, 1953, and questioned the ability of Mary A. Koos and Grace A. Koos to competently manage the business. Specifically it asserted that: "Your petitioner is fearful that the said Mary A. Koos is not acting to promote the welfare of the beneficiaries of the trust estate herein but, on the contrary, is depriving the trust estate of a substantial profit and is acting for her own personal benefit in so doing." The petition prayed that the court "make such order as shall be just and proper relative to the actions of Mary A. Koos as trustee, either as to refusing to appoint her or removing her as trustee, as the case may be or require, and appointing some disinterested or impartial person as executor or trustee who can then act upon such offer of sale of shares of stock free of any personal conflict of interest or dual position."
In her answer to the petition of the guardian ad litem, Mary A. Koos acknowledged receiving the Newhagen offer, but denied that its acceptance would be beneficial to the estate or the trust. Upon information and belief she alleged that Newhagen was the nominee of Richard P. Koos who attempted by this means to gain control of the corporation. She alleged that Richard P. Koos has not been helpful to the *488 interests of the estate or the trust. She asserted a belief that should Richard P. Koos gain control of the corporate affairs, any shares of stock remaining in the estate or trust would have no market value, and that the most that could be expected by way of return would be the highest dividend previously paid of five per cent.
In her answer to this petition Mary A. Koos then revealed a sale of a portion of the stock by her to Grace A. Koos on March 17, 1954, at $180 per share. She averred that:
". . . on March 17th, 1954, she accepted an offer from Grace A. Koos of one hundred eighty dollars ($180) per share for 700 shares to be sold from the estate as a whole, plus all additional shares, if any, hereafter to be allocated to the trust to be established for decedent's children, on terms and conditions which, by reason of the widow's consent as to this particular transaction, but not otherwise, will eliminate all such stock from said trust; that said offer and acceptance are on file and of record herein as evidence of this transaction, which this executrix believes to be advantageous and for the best interests of the estate as a whole and particularly the trust to be established for decedent's children."
Under date of April 20, 1954, A. J. Newhagen submitted a new offer of purchase at $190 per share upon conditions contained in his earlier offer.
Following a hearing upon the guardians' ad litem petition, the court, Hon. W. W. DAVIS, judge, presiding, by "Order, Judgment, and Decree" dated August 17, 1954, directed that the petition be dismissed and that the various motions made during and at the close of the trial, including an application to disapprove of the sale of the stock to Grace A. Koos, be denied. The court made findings which read in part:
"1. That the testator, Edward J. Koos, under his last will and testament, clearly and unambiguously gave to his executrix, Mary A. Koos, broad and comprehensive powers and discretions.
*489 "2. That the powers and discretions of said executrix should not be disturbed except for bad faith, fraud, or mere arbitrary action. That the failure of Mary A. Koos, executrix, to accept or submit to the court for approval the offer of one A. J. Newhagen dated February 5th, A. D. 1954, and the offer dated April 20th, A. D. 1954, was not prompted by bad faith, fraud, or mere arbitrary action on the part of the executrix. That her decision that the acceptance of said offers might be injurious to the estate as a whole and the trust hereafter to be established was within her discretions and was prompted by good faith on her part.
"3. That Mary A. Koos, executrix, in entering into a contract with one Grace A. Koos, properly and wisely exercised her powers and discretions. That such contract and sale is advantageous to the estate as a whole and to the trust to be established. That such contract and resulting sale, when consummated, is hereby approved.
"4. That Mary A. Koos, executrix, since her appointment, has been acting in a manner necessarily contemplated by the testator.
"5. That Mary A. Koos, executrix, has not been acting in a dual capacity.
"6. That Mary A. Koos, executrix, has not acted dishonestly, fraudulently, or arbitrarily.
"7. That Mary A. Koos, executrix, under all circumstances herein, has acted reasonably and to the best interests of the estate and the trust to be established.
"8. That the deceased, Edward J. Koos, named and appointed Mary A. Koos, his wife, as executrix of said estate and trustee of the trust to be established. That Mary A. Koos has properly exercised the powers and discretions given to her by the deceased, and that there is no need for the appointment of any other person to take her place.
"9. That the executrix, Mary A. Koos, did not act in bad faith in voting a salary for herself. That such action on her part did not constitute dealing with herself for her own benefit or acting in a dual capacity.
"10. That this court is not concerned with the internal operation of the corporation, and that there is no evidence which would indicate that the corporation has not prospered under the present management.
*490 "11. That the testator clearly and positively indicated his desires under his will. That the executrix has exercised the powers and discretions given to her by the deceased with honesty, discretion, and good faith. That this court should not attempt to draw a new will for the deceased, Edward J. Koos."
Thereafter, and under date of October 8, 1954, Richard P. Koos submitted an offer to Mary A. Koos to purchase at $300 per share a minimum of 600 shares and a maximum of 950 shares of the stock of the company which are held by or allocated to the trust created by the will of Edward J. Koos upon terms and conditions similar to those stated in the Newhagen offer. A certified check for $1,000 was tendered as good faith of the offer.
An order returnable October 11, 1954, was issued by the county court directing Mary A. Koos to show cause why the "Order, Judgment, and Decree" of August 17, 1954, should not be annulled and set aside, and consideration given to the sale of the shares of stock assignable to the trust estate and particularly to the latest offer of Richard P. Koos; or if such application be not granted, that Mary A. Koos be restrained, pending appeal to the supreme court, from consummating the sale of the shares to Grace A. Koos. This show-cause order was based upon petition of the guardian ad litem. The offer of Richard P. Koos was referred to therein. In the absence of Hon. W. W. DAVIS, presiding judge of the county court of Kenosha county, Hon. M. EUGENE BAKER presided as acting county judge at the hearing. The court denied the motions.
It is from the judgment rendered by Hon. W. W. DAVIS and the order rendered by Hon. M. EUGENE BAKER that these appeals were taken.
STEINLE, J.
Our obligation here is to determine whether the trial court's findings are contrary to the great weight and clear preponderance of the evidence.
In the main, the appellants contend that the record indicates that Mary A. Koos has not administered her fiduciary duties toward the beneficiaries of the trust in a manner commensurate with the degree of loyalty required by law; that the sale of the shares of stock to Grace A. Koos is invalid; that Mary A. Koos must be removed or not appointed as trustee; and that some other person be appointed as trustee who shall control the sales of the shares of stock which are to be allocated to the trust.
On behalf of the respondents it is maintained that her conduct as fiduciary reflects the highest degree of honesty and faithfulness; that the standard of reasonable judgment does not apply to her; and that her contract for the sale of the shares of stock to Grace A. Koos is advantageous to the estate as a whole and to the trust to be established.
The testator's last will and testament manifests an intention on his part to confer upon his widow in her representative capacities of executrix and trustee, the broadest of powers and discretions. She is clothed with absolute rights, powers, and discretions to retain any assets of the estate, or to sell or contract for the sale of any such assets as she shall deem in the best interests of the estate. While there is to be an equal distribution in value of the estate between the widow and the trustee, nevertheless, as to allocation of specific assets, the judgment of the executrix and trustee is binding and conclusive upon all parties.
*492 It is the rule in this state that when under a will a fiduciary is granted absolute or conclusive powers and discretions, the test of "reasonableness" or "reasonable judgment" is not applicable. A court may not exact the standard of "reasonable judgment" from such fiduciary invested with such authority. The court may interfere only with the bad faith, fraud, or mere arbitrary action of such fiduciary. These principles are well enunciated in Estate of Teasdale (1952), 261 Wis. 248, 256, 52 N. W. (2d) 366, where it was said:
"The appellant trustees submit that the will provided the determination of value by the trustees shall not be open to review but shall be final and conclusive, and therefore the court must observe the prohibition. In Estate of Wells (1914), 156 Wis. 294, 144 N. W. 174, the will made the determination of executors and trustees `final' upon certain apportionments. We said that words could go no further in the effort to place absolute discretionary powers in the hands of his executors in this regard. And we then said (p. 306), `In the absence of bad faith, fraud, or mere arbitrary action, . . . the executors' determination must be held conclusive. . . .' We consider that in the instant case the trial court was privileged to examine the determination of value and to set it aside if it was made in bad faith, or was a mere arbitrary action."
These principles are also in harmony with those stated on the law of this subject in Restatement. It is there declared that:
"Interpretation of trust instrument as to extent of discretion. The extent of the discretion conferred upon the trustee depends primarily upon the manifestation of intention of the settlor. The language of the settlor is construed strictly so as to effectuate the purposes of the trust. The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment. The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably, even where there is a standard by which the reasonableness of the trustee's conduct *493 can be judged. This may be indicated by a provision in the trust instrument that the trustee shall have `absolute' or `unlimited' or `uncontrolled' discretion. These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness. In such a case the mere fact that the trustee has acted beyond the bounds of a reasonable judgment is not a sufficient ground for interposition by the court, so long as the trustee acts in a state of mind in which it was contemplated by the settlor that he would act. But the court will interfere if the trustee acts in a state of mind not contemplated by the settlor. Thus, the trustee will not be permitted to act dishonestly, or from some motive other than the accomplishment of the purposes of the trust, or ordinarily to act arbitrarily without an exercise of his judgment." Restatement, 1 Trusts, p. 488, sec. 187, comment j.
It cannot be held that the decisions of Mary A. Koos in declining the Newhagen offers and in accepting the Grace Koos offer without submitting such considerations for the court's determination, were contumacious as claimed by appellants. The court, in fact found, that she had exercised reasonable judgment.
The trial court determined that Mary A. Koos did not act in bad faith when voting a salary for herself. Such action does not appear to have been disadvantageous to the trust estate. Clearly, it was within her right to vote the 1,900 shares of stock at the meetings of the company as she deemed for the best interest of the estate as well as for the company. In its memorandum decision the court observed that: "There is nothing of record which would indicate that the corporation has not prospered under the management of the executrix, and her sister-in-law, Grace Koos, and nothing to indicate that in any prior year, when Richard P. Koos was managing the company, it was managed in a more efficient way than it has been since the stockholders' meeting of 1953, . . ."
It is contended that the offers of R. J. Newhagen to purchase at $175 per share and later at $190 per share, a minimum *494 of 600 and maximum of 950 shares of the stock to be allocated to the trust estate, were better than the offer taken by her from Grace Koos to purchase 700 shares at $180 per share, and as many more up to 950 as the executrix determined to sell, and that, consequently, in declining the Newhagen offer the widow was not protecting the interest of the beneficiaries of the trust in the manner required by law.
It is the position of Mary A. Koos that a sale of part of the shares of stock to A. J. Newhagen would have relegated the unsold portion of the estate's stock from its present favorable majority position to an extremely unfavorable minority position at the mercy of an openly hostile majority, thereby seriously impairing the value of such remaining stock. With respect to this item, the trial court found that there was no violation of duty of good faith, care, or diligence on her part in regard to her obligations to the beneficiaries of the trust. It found that in view of her obligation as executrix to protect the interests of all of the beneficiaries of the estate, there was no improper dual undertaking on her part. In the interest particularly of the beneficiaries of the trust, the court scrutinized with care all of the actions of the widow in her contract of sale of shares to Grace Koos, and approved of the contract. It is noted that negotiations for the sale of shares to Grace Koos had been pending over a period of time before the contract was made. It does not appear that such dealings or the results thereof, must be held, in the light of the circumstances, as having been acts participated in by her on an arbitrary basis or in bad faith. Since the court determined that the contract with Grace Koos was valid, and approved of it, there was no obligation on the part of Mary A. Koos to rescind it, nor was the court empowered to do so, despite the offer later made by Richard P. Koos. Removal of the widow as trustee was found not to be required.
The court found that the executrix and named trustee had not acted dishonestly, fraudulently, or arbitrarily and that under all the circumstances she had in fact acted reasonably *495 and to the best interest of the estate and the trust to be established. It appears that in its findings and conclusions the court properly considered and applied the correct principles of law in relation to a situation such as this. The weight and credibility of the evidence was for the court. We are obliged to determine that the trial court's findings are not against the great weight and clear preponderance of the evidence.
Respondents on this appeal suggested that under authority of Klitzke v. Herm (1943), 242 Wis. 456, 8 N. W. (2d) 400, this court, on its own motion dismiss the appeal from the order refusing to vacate the "Order, Judgment, and Decree" of August 17, 1954, for the reason that it is not an appealable order, and that this court is without jurisdiction. Separate motion seeking dismissal upon such ground was not addressed to the court.
The motion to vacate the judgment was based on the ground of newly discovered evidence. This was a final order which affected a substantial right, and is appealable under sec. 274.33 (2), Stats. The situation is controlled by the ruling in Harvey v. Harvey (1930), 201 Wis. 378, 230 N. W. 79.
On October 11, 1954, Judge BAKER, who had been called upon to determine appellant's application with reference to the offer of Richard P. Koos to purchase all of the stock assignable to the trust at $300 per share, stated in his decision:
"The papers on file and of record show that a contract has actually been entered into by and between the executrix, purporting to act as such and as named trustee, and Grace A. Koos [March 17, 1954]. The court has previously [August 17, 1954] said that this is a good and binding contract and is approved. If that decision of the court is given full weight, the offer made in the last forty-eight or seventy-two hours is, of course, too late to release the parties involved in the contract which has been approved."
*496 The last offer of Richard P. Koos had not been made when Judge DAVIS determined that the contract made with Grace Koos was valid, and approved of the same. That contract became effective and binding upon the parties thereto when made (March 17, 1954). Richard P. Koos's offer is a new development. It pertains to a situation that did not exist at the time of trial. It is not in the category of newly discovered evidence. Were we to assume that on August 17, 1954, the court had approved the Newhagen offer instead of the Grace Koos offer, and had a contract then been negotiated with Newhagen, clearly, consideration of an offer such as Richard P. Koos made in October, 1954, could not be entertained.
We are of the opinion that the judgment and the order appealed from must be affirmed.
By the Court.Judgment and order affirmed.